Good morning, everyone. Welcome. Our first case this morning is United States v. Neil Kienast et al. Thank you, Your Honor. Good morning. May it please the Court. My name is Anderson Gansner, and I represent Marcus Owens in his appeal. Three years ago, a federal magistrate judge signed a warrant that she lacked the power to grant, a warrant that was outside her jurisdiction. And as Justice Frankfurter put it, when a court acts without jurisdiction, it is not acting as a court, but rather as a pretender to judicial power. So orders and judgments and even warrants issued without jurisdiction are void. They carry no legal effect. You treat entire cases as if they've never occurred, and you do so across the law in all different areas. And you do so especially here in federal court, given that we are a court of limited jurisdiction. So the question now is, are there any consequences for the lack of jurisdiction for this underlying warrant? I'd like to use my time, and I know the Court knows that our time is divvied up among the different appellants. I'd like to use my time to address three core points. First, whether the good faith exception can even be applied at all to a warrant that was issued without jurisdiction. Second, I'd like to explain how this Court's Rule 41 jurisdiction does permit suppression, despite what the government has suggested in its briefs. And third, I'd like to argue that even if the good faith exception could be seen as applying to a warrant that was issued without jurisdiction, how the government cannot establish good faith here in this case. Turning to the first point about why the good faith exception should not apply to a warrant issued without jurisdiction, legally, there was never any warrant to uphold. It was void from the beginning. And Leon, by its very terms, when they're talking about applying the good faith exception, applies to warrants that are later invalidated, meaning that they were valid for some period of time until someone along the line changed their mind. But that didn't happen here. The warrant here was never any good. And that matches up with the idea here in federal court that jurisdiction is really fundamental. It is a red line that you do not cross. What exactly is the distinction between this case and the cases where the warrant was recalled? Sure, Your Honor. You're talking about Herring and Arizona v. Evans. Yes. And the 10th Circuit notes that in deciding to apply the good faith exception. The difference there is that the underlying judges that issued those arrest warrants absolutely had the power to issue those arrest warrants. There's no argument otherwise. Right, but we're talking about invalid warrants that no longer existed. Either were quashed or recalled in the Herring and Evans cases. So there is no warrant anymore, but the good faith exception still applied. Right. I understand. So in both those cases, the underlying judge at least had the power to do what he or she did in that case. Here, there was an order where the magistrate judge simply didn't have the ability to authorize this type of a warrant. And under the law, that warrant was never any good from the beginning. So you take it all the way back. How would such a rule forward the policies of the good faith exception? If we were to deny the good faith exception here, how would that forward the policies that the court has said are inherent in the good faith exception? I understand, Your Honor. Throughout Supreme Court case law, they talk about weighing the benefits of suppression. And that's really what the court is getting at there. And the reason it would forward, I think, the goals is because it would encourage the government very strongly to help the court be a guardian of the court's own jurisdiction. And that's when you look at this case, and if we get into actually applying potentially the good faith exception here, you see the government was not acting in good faith because they did nothing to bring this glaring Rule 41B issue to the court's attention. They didn't talk about it in their warrant application. They didn't call the device a tracking—excuse me, the NIT a tracking device, which they're belatedly doing now. Instead, they said it was a search and seizure warrant for information. They knew that the rule was in the process of being amended. They knew that a similar program had been turned down earlier. And this is something I failed to cite in my brief, so I apologize, but I think the court can take judicial notice of it. As early as— You mean— The government, excuse me, and the agents involved. Not the officer who had to execute the warrant. Well, Your Honor, what I think Haring says in terms of who you look at when you're talking about did someone act reasonably is it says you look at the entire group of officers involved in drafting a warrant and gathering information and in executing it. And I think what the record shows is that this is a very complex, complicated warrant. It involved people inside Main Justice. It involved agents who knew Rule 41 really well because they're citing different portions. Is there a special rule when the suits get involved in the execution of the warrant? Is that right? No, Your Honor. I think you just apply sort of the language of Haring, which is that you look at all the circumstances. Certainly, it's different than just a beat cop who sees something and goes to his local state court judge. This is a really complex, really involved— It's going to be a fairly complex judicial inquiry, isn't it? I think sometimes it may be. And it's fitting in this case given the worldwide impact and the massive scope of the warrant. That's why in some jurisdictions there have been evidentiary hearings about what officers knew and who they consulted with. Although when the rule was amended, no one thought we needed any special kind of proceeding or anything, did they, for these kinds of warrants? You mean because the rule has been amended? Yeah. Under the amended version, there's no special complicated procedure or exception when there are—when counsel's involved or anything like that. The amended rule, B-6, doesn't talk about that, Your Honor. No, it doesn't. So apparently nobody thought any special care had to be given in those situations. Well, Your Honor, I think they would still need to show that it was—they don't know where the locations are. They would have to check all the different boxes in that part of B-6. And that may very well involve bringing an agent in, putting them under oath, getting testimony about the efforts that they've taken. But your position, counsel, would be that before the amendment there was no possible way to track those who were downloading and exchanging child porn on a server like Tor and Playpen, right? Because there would be no way that you could actually physically satisfy any of those portions of 41B. That's correct. The rule simply didn't allow for it at that point. So there are options. There are limited options. The government was in a tough spot. But what they could do is they could try to investigate in other ways. They had access to the entire database of exchanges and posts that were on the website. I would hope that they could go through it and try to determine where people might be or make some good-faith judgments about where people might be located. But I'm just saying that the process you were just describing where the agents can go in and testify to the court about where— I mean, we're talking about something that would have been quite complex, something that would be unnecessary now, but that would have been quite complex before and probably impossible for the court—I mean, for the agents to make that kind of showing. In terms of B4 being satisfied or— Yeah, well, right. I mean, because none of those exceptions could have been satisfied. I don't see how— That's correct. Unless it's a tracking device. Put that aside for the moment. But assume that you're right, that it's not a tracking device and the person on the property wasn't in the jurisdiction, et cetera. There really would have been no way for the government to conduct this kind of operation at all. So it's not a matter of they didn't go through the right process to achieve something that was achievable if they had done it correctly. Your position is the government shouldn't have been able to conduct this kind of investigation on child pornographers. I agree. Yes, that is our position, that just the federal rules didn't give a magistrate judge power to exercise this kind of a search. They would have to go about it somehow differently. That's right. And that that was obvious because the good faith exception covers everything other than intentional misconduct by the government or obvious errors. Well, what the good faith exception covers, and I think Haring really clarifies this well, is it says good faith means reasonable reliance. It means that we're trusting the officers, we're up front, and we're making a good decision. And here the government cannot show reasonable reliance because they don't address the issue to the magistrate judge. They don't tell her, listen, this might violate Rule 41B. They don't tell her about the guidance from the DOJ saying that we need to apply for districts. Well, the magistrate didn't spot the issue either apparently, right? I mean, it was it's it's difficult, right? It's putting something that used to happen physically in the context of the Internet, where rather than people going to a physical place, they're traveling via the Internet, you know, to this this playpen site. And the magistrate judge didn't spot this issue either. That's right. But she needed the assistance of the government in this, I think, very complex matter. If they wanted a tracking device, there's a special warrant that would have brought it to her attention under the that comes from the office of the administrative office of the U.S. courts. They simply didn't do it. And I think that shows that an officer in that position could not reasonably rely on the warrant because they never brought it to her attention. They didn't know whether she saw the issue or not. So I think that that's the crucial distinction with regard to good faith. I see that I'm out of time, so I'm going to concede my time to my client. Sorry, my colleagues. Thank you. Thank you. Who's next? Mr. Fredrickson. Good morning, Your Honors. My name is Tyler Fredrickson. I represent the appellant, Neil Keenest. I'd like to start this morning by distinguishing good faith and reliance on an already issued warrant and good faith in application. I think what's really important in this case is the knowledge of the agents and the team that were involved in Operation Pacifier that applied for the warrant at issue here. We've seen, and I've illustrated in my briefing, that there was a similar search back in 2014 that was ultimately denied a warrant from the Southern District of Texas. And the reason why was because it exceeded the limits of Rule 41. What we're talking about here is an agent, a group of agents from the FBI that worked together to form this affidavit knowing the territorial restrictions of Rule 41. The knowledge and the experience of the agents at the time of this application would infer that they knew that the warrant that they were asking for had to be a GPS warrant in order for it to be issued. I think that the record in the Matisse case from Washington shows that the knowledge of these FBI agents was much more than what they just limited in their affidavit and their application for this warrant. Specifically, they knew that this was a program that was going to be executed from Virginia and then would go globally. They didn't do a very clear job of bringing that to the magistrate judge's attention. Particularly, U.S. v. Bonner, which I cite in my pleadings, says or held that the primary purpose of the particularity requirement of the Fourth Amendment is to limit the discretion and promote the accountability of the officers executing the warrant. In my case in particular, or in my client's case in particular, what we sought to do was to produce Agent Douglas McFarlane to inquire as to exactly what his knowledge was at the time of the application. Why I think that that's so important is because if he was aware of the district court proceedings and the Department of Justice's attempts to change the rule back in 2013, 14, and 15 before this magistrate judge signed the warrant, I think that is directly attributable to, I would call it bad faith, not good faith in this scenario. Haven't warrants of this type been upheld by other district courts around the country? Yes, they have. Suppression motions have been denied, so there was a distinct dispute in the courts about whether these are valid or not, so why doesn't that cut in favor of good faith? Part of the reason why I sought to produce one of these agents is because it's just a plethora of different rulings in the districts. We have rulings that there is no Rule 41 violation. We have rulings that there is a Rule 41 violation. I think that the court in Levin got really close to analyzing the Leon good faith example or analysis here, and really what I think that they missed is that the agents that applied for the warrant had some knowledge. They had 20 years of experience. There was a group of agents that worked together to write this affidavit, and these people are very, very technically savvy. They know exactly what they needed to do to exploit the usernames, and you guys brought up an interesting point earlier as to an alternative way to conduct this investigation. What we had at this time, the officers had already seized the server from Naples, Florida. They had the physical server themselves. They had the list of information. They also applied for a warrant to intercept messaging, and with those two tools, they had the ability to particularize a more specific warrant prior to the deployment of the NIT. So what that means is that they had the ability to run the server, communicate with people that were either posting, see traffic on the server, and then go after the particular people in these cases. But no means of identifying them. No means of identifying, but that's where the NIT comes in because they already possess the server itself. So they can see the traffic on the server. They can see the name on the server itself, and then what they could do is they could apply for an NIT warrant for that particular person, and that would get rid of the generalization of searching thousands and thousands. If they don't understand that particular person, why would that satisfy 41B in terms of the territorial jurisdiction? That person would still be outside. Because they could apply in the district where the person is located. So then they wouldn't have just one vast, broad, sweeping warrant that covers the entire United States, and we've subsequently found out other countries as well. I think that that's really the biggest point here is that the good faith analysis really needs to be applied to the knowledge of the agents that were seeking the warrant at the time of seeking the warrant because of the law, because of the district decisions denying similar warrants, and because of the unique language used in the applications that tailored this, what I would call a computer virus, and make it more similar to that of a GPS tracking device when there's obvious differences. Thank you. Thank you. Anything else from the defendants? I have Mr. Greenberg. I'm doing the rebuttal. Thank you. Okay. Mr. Koenig. Thank you. Good morning, Your Honors. May it please the Court. My name is Jonathan Koenig. I appear on behalf of the United States in these consolidated appeals. I'm happy to answer any of your questions, of course, but I would prefer to focus on the question of remedy. I think remedy is the surest ground for affirming the district courts in these cases, and, in fact, that's the route that's been taken by the four circuits to have addressed the NIT warrant to date, the first, fourth, eighth, and tenth circuits. According to the defendants, the exclusionary rule applies to Rule 41 violations, but the good faith exception does not. I'll say that again. They argue that the exclusionary rule applies to Rule 41 violations, but the good faith exception does not. Part one of that formulation is directly contrary to Seventh Circuit case law, Burkos, Trost, Hornick, Cazares, Olivas. The second part of that formulation respectfully cannot be squared with the Supreme Court's recent good faith cases, especially Herring and Evans. As Presiding Judge Sykes noted, those cases involved warrants that were no good, and yet the officers relied on them, and the court focused on their conduct in doing so. The gist of Herring and Evans-Davis, also a recent Supreme Court case, is that suppression is not warranted when deterrence is questionable and the cost of suppression is high, as it certainly is in these cases. I would just note Mr. Owens raises an outrageous conduct argument, and he sort of argues that this operation netted a handful of people who possessed child pornography. It wasn't worth the downside risks involved in keeping this website up and running for two weeks. Those kinds of decisions are best left to the executive branch. In addition, I will be filing a 20HA letter that will call your attention to a district court decision from the Eastern District of New York very recently decided, which points out some of the very fruitful results of the investigation, including the apprehension of some hands-on offenders and child pornography producers. That's United States v. Kim from the Eastern District of New York in 2017. So the cost-benefit analysis that's part of my opponent's outrageous conduct argument doesn't hold up. The remedy, again, if we're looking just at the Rule 41 cases, this court could not be clearer that a Rule 41 violation that is non-constitutional does not warrant suppression. I think the argument is that this is of constitutional dimension because it was a jurisdictional defect under the statute, not just a rules violation. And that takes this case outside of circuit precedent about mere Rule 41 violations. That is indeed the argument, Your Honor. I think, for example, if you look at Hornick, Hornick involved a state warrant. Technically, that court would have no authority under Rule 41. When I talk in terms of jurisdiction, jurisdiction has a lot of meanings. There's subject matter jurisdiction, territorial jurisdiction. We would submit that Rule 41 is more in the nature of a venue provision. In fact, the most recent revisions to the rule have changed the caption. We're talking about the magistrate judge's power. Yes. That's of jurisdictional import. It's territorial jurisdiction. I'm not saying it's to be lightly disregarded. What the agents did in this case was they asked for a warrant in the district that had the most connection to the investigation. We believe that Rule 41 did authorize the warrant as a tracking device. A number of courts have agreed with us. Some have disagreed with us. But again, that plays into the good faith analysis. And really from the government's perspective, all roads do lead to good faith in this particular case. But your initial position you were just pressing is that a Rule 41 violation can never justify application of the exclusionary rule because it can't be a constitutional violation. Is that what you're asking us to hold? Or did I misunderstand your position? The law of the circuit seems to be that unless it is a violation of constitutional magnitude. I understand that, but you're saying that a Rule 41 violation would never be a violation of constitutional magnitude. Is that what you're arguing? It would be if it failed to satisfy the warrant clause of the Fourth Amendment. If there were not probable cause or if the defendants. But on the simple ground that it exceeded the Rule 41 territorial jurisdiction requirements, it would not be of constitutional dimension. Correct. At least in this circuit, the focus has been on the warrant clause of the Fourth Amendment. Assuming that there's not a problem there, there's no basis for suppression. There's no basis. Certainly not under the Leon line of cases concerning good faith. My opponents did talk a little bit about the sort of state of play in 2015 when the agents proceeded with this warrant. They relied very heavily on a single magistrate judge opinion from Texas to conclude that the FBI was on notice that magistrate judges lacked jurisdiction to issue this kind of warrant. The warrant in that case involved similar technology. It was far more sweeping than the network investigative technique used in this case, which retrieved really only data about the person's location. Again, consistent with the government's view that this is a tracking device. It tells you where the defendant goes after visiting the Eastern District of Virginia electronically. The warrants in the Texas case allowed the government, I believe, to access the defendant's computer camera and internet browsing history and some other much more invasive items well beyond the seven specific items that are in Attachment B in this case. Just really to conclude on behalf of the government, suppression is an extreme sanction for flagrant abuses of the Constitution. It's a judicially created exception, and it doesn't apply when deterrence is questionable, as it certainly would be here, especially in light of the amendments to Rule 41, which clarify that this type of technique may be used. There's nothing to deter going forward, and invoking the exclusionary rule would be pointless. We would ask you to affirm. I'm happy to answer any other questions you have concerning particularity or the discovery issue in the Pekinas case or the Franks issue in the Owens case. Apparently not. Thank you. Thank you very much. Mr. Greenberg. Thank you, Your Honors. When I look at this situation, I listen to these arguments today. I look at the fact that the exclusionary rule exists for a reason, and it exists because every once in a while there is that case that justifies its application. According to Leon, if the magistrate or judge in issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false, except for a reckless disregard of the truth, the exclusionary rule should apply, and good faith should not. And here, what did they do? They completely misled this magistrate into issuing this warrant. They buried what they were going to do. They didn't advise the magistrate that they were going to send out an extraterritorial signal that was going to go into people's homes and search their computers and gather information. It's exactly what the exclusionary rule is designed to guard against. And to say now, well, the rule's been amended, so it's no longer a problem, doesn't mean it wasn't a problem before. If someone slips on the ice outside and I then throw down salt, I don't say, well, the fact they slipped is no longer a problem because now I've thrown down salt. There's a reason why they changed the rule. They went to a judge who had no power to do this. They didn't tell the judge the reality of what they were asking for. I think the application was quite clear that this would permit the government to use this NIT technology to search computers wherever found within the United States. I respectfully disagree. It did not tell the magistrate that the NIT was going to be sent to the computers. It made it seem as if computers were going to log onto the server in Virginia and the search was going to take place in Virginia. And it's very carefully worded like that. It never describes that a signal is going to be transmitted to these computers, that software is going to be installed on these computers in these remote locations, and that it's then going to gather the information and send it back. It was very, very carefully drafted to avoid exactly that reading. And the government in their pleadings say, well, a logical inference. The magistrate should have known because it was a logical inference. No, when you're asking someone to issue a warrant, you should explain to them what search is going to take place, where the search is going to take place, and so forth. And nowhere within this complaint does it explain those factors. The other fact when the good faith exception should not apply, or one of the other exceptions, is where the magistrate has abandoned their judicial role. And in this case, I don't think it was necessarily the magistrate's fault, but the magistrate had no authority to issue this. Had the magistrate known what was going on, they very likely would have said, I don't have this authority. You need to go see a different judge. They went and saw a different judge to get one of the warrants, and yet with the second warrant issued the same day, they went to the magistrate judge. Why didn't they ask the district court to issue the second warrant? Why didn't they ask the district? I don't know the answer to that. It's just a question that arises of why did they go to this magistrate judge when they didn't go to the magistrate judge for the first warrant? I don't know, but I think that the logical inference from that is that something happened when the first warrant was issued, and they felt they couldn't go back to the district court. So they sought someone else to issue it. Because the magistrate wouldn't understand how the technology worked based on the information that the government said it was seeking? The government didn't explain how the technology works. That's exactly the point. The government didn't say that we are going to have this device that is going to go out across the country or across the world and do this. They said people are going to log on to our server. If I do a search, a Google search, in theory, I'm logging on to a Google server, wherever it's located, to do that search. In this case, that was the impression that the government gave. We have a computer. We seized in Florida. We've put the computer in Virginia. People are going to seek out this computer. When they search this computer and they search for information on this computer, we're going to gather the information. That's what the warrant application said. That was intentionally, purposefully misleading. And suppression is the proper remedy in this case, notwithstanding the charges, notwithstanding how successful the investigation may have been. I see my time is up. Are there any other questions? Apparently not. Thank you. Thank you. Our thanks to all counsel. The case is taken under advisement. Thank you.